**2017-2012, -2013, -2014, & -2074**

# United States Court of Appeals for the Federal Circuit

PARKERVISION, INC.,

*Appellant*,

*v.*

QUALCOMM INCORPORATED, QUALCOMM ATHEROS, INC.

*Cross-Appellants*.

*Appeals from the United States Patent And Trademark Office, Patent Trial and Appeal Board, Nos. IPR2015-01828, IPR2015-01829, IPR2015-01831*

## REPLY AND CROSS-APPEAL RESPONSE BRIEF OF APPELLANT PARKERVISION, INC.

MICHAEL T. RENAUD
WILLIAM A. MEUNIER
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
(617) 542-6000

*Attorneys for Appellant*

February 26, 2018

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

ParkerVision, Inc. **v.** Qualcomm Incorporated, Qualcomm Atheros, Inc.

Case Nos. 2017-2012, -2013, -2014, -2074

**CERTIFICATE OF INTEREST**

Counsel for the:
☐ (petitioner) ☒ (appellant) ☐ (respondent) ☐ (appellee) ☐ (amicus) ☐ (name of party)

ParkerVision, Inc.

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held Companies that own 10 % or more of stock in the party |
|---|---|---|
| ParkerVision, Inc. | N/A | None |
| | | |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Thomas F. Presson of ParkerVision, Inc.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47. 4(a)(5) and 47.5(b).

The Court's decision in this consolidated appeal may affect *ParkerVision, Inc. v. Qualcomm Incorporated, et al.*, No. 6:14-cv-00687-PGB-KRS (M.D. Fla.).

February 26, 2018 /s/ William A. Meunier
Date Signature of counsel

Please Note: All questions must be answered William A. Meunier
Printed name of counsel

cc:

# TABLE OF CONTENTS

***Page***


CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ iii

STATEMENT OF RELATED CASES ........ 1

STATEMENT OF ISSUES ........ 1

SUMMARY OF ARGUMENTs ........ 2

ARGUMENT ........ 5

I. Qualcomm's Cross-Appeal: The Board's Finding That Qualcomm Failed To Prove the Challenged Method Claims Unpatentable Should Be Affirmed ........ 5

A. The Applicable Standard of Review ........ 6

B. Substantial Evidence Supports the Board's Finding That Qualcomm Failed To Prove That Nozawa Disclosed Configuring an Oscillating Signal To Generate a Plurality of Harmonics ........ 7

1. Substantial Evidence Supports the Board's Finding That Nozawa Does Not Disclose the Required Plurality of Harmonics. ........ 10

2. Substantial Evidence Supports the Board's Finding That Nozawa Did Not Disclose Configuring an Oscillating Signal To Generate the Claimed Plurality of Harmonics. ........ 12

C. Qualcomm Has Identified No Reversible Legal Error ........ 13

1. The Board Correctly Stated and Applied the Test for Invalidating Method Claims. ........ 15

2. The Board Correctly Found That Qualcomm Waived and Failed to Support Its Belated Obviousness Theory. ........ 16

II. ParkerVision's Appeal: The Nozawa IPRs ........ 19

A. The Board Committed Legal Error By Finding That the Challenged System Claims Are Unpatentable ........ 20

1. The Board Found That Qualcomm Did Not Prove That Nozawa Disclosed an Oscillating Signal Configured To Generate a Plurality of Harmonics As Required By the System Claims....20

2. The Board Committed Reversible Legal Error By Reading the Oscillating Signal/Plurality of Harmonics Limitations out of the System Claims....21

a. Federal Circuit Precedent Holds That a Claim Element's Required Function May Not Be Read Out of the Claim....24

b. Qualcomm's Cited Decisions Do Not Support the Board's Erroneous Claim Construction....27

B. The Board's Untimely "Capable of" Construction and Theory Denied ParkerVision Due Process in Violation of PTAB's Controlling Rules, and Qualcomm Has Identified No Timely Assertion of This Construction and Theory in Its Petitions or the Board's Institution Orders....32

III. ParkerVision's Appeal: The Ariie IPR....34

A. Qualcomm Does Not Attempt To Support or Rely on the Board's Own Untimely and Legally Incorrect Invalidity Theory....35

B. Qualcomm's Theory Was Untimely and Unsupported....36

1. Qualcomm's Theory Was Not Raised until Its Reply Brief....36

a. Qualcomm's Petition Never Identified the Krauss Oscillating Signal As Causing the Ariie FET To Gate....36

b. Qualcomm Identifies No Assertion in Its Ariie IPR Petition That Identified the Krauss Oscillating Signal As Causing the Ariie FET To Gate....39

2. Qualcomm Presented No Evidence Supporting Its New Obviousness Theory....45

CONCLUSION....47

CERTIFICATE OF SERVICE....48

CERTIFICATE OF COMPLIANCE....49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cisco Sys. v. Lee*,
557 F. App'x. 963 (Fed. Cir. 2014) ....................31, 32

*Cybersettle, Inc. v. National Arbitration Forum, Inc.*,
243 F. App'x 603 (Fed. Cir. 2007) ....................15

*Dell Inc. v. Acceleron, LLC*,
818 F.3d 1293 (Fed. Cir. 2016) ....................34, 45

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
287 F.3d 1108 (Fed. Cir. 2002) ....................26

*Hewlett-Packard v. Bausch & Lomb*,
909 F.2d 1464 (Fed. Cir. 1990) ....................31

*Hewlett-Packard v. Mustek Sys.*,
340 F.3d 1314 (Fed. Cir. 2003) ....................28, 29

*In re Giannelli*,
739 F.3d 1375 (Fed. Cir. 2014) ....................6, 24

*In re Kao*,
639 F.3d 1057 (Fed. Cir. 2011) ....................6

*In re Kotzab*,
217 F.3d 1365 (Fed. Cir. 2000) ....................6

*In re Michlin*,
256 F.2d 317 (C.C.P.A. 1958) ....................29, 30, 31

*In re NuVasive, Inc.*,
841 F.3d 966 (Fed. Cir. 2016) ....................34, 45

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ....................34, 45

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................45

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
Case No. 2017-2295, 2018 U.S. App. LEXIS 1078 (Fed. Cir. Jan. 16, 2018) ....................15, 16

*Motorola, Inc. v. Interdigital Tech. Corp.*,
121 F.3d 1461 (Fed. Cir. 1997) ....................23

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013) ....................6

*Symantec Corp. v. RPost Commc'ns Ltd.*,
IPR2014-00355, 2014 Pat. App. LEXIS 4421, Paper No. 12 (PTAB July 15, 2014)....................45

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
659 F.3d 1376 (Fed. Cir. 2011) ....................24, 25, 26

*Unwired Planet LLC v. Google, Inc.*,
841 F.3d 995 (Fed. Cir. 2016) ....................27, 28

**Statutes and Rules**

37 C.F.R. § 42.23(b) ....................34, 39, 45

## STATEMENT OF RELATED CASES

Appellant ParkerVision, Inc. ("ParkerVision") certifies that no other appeal from the same proceedings below is now or was previously before this Court or any other appellate court.

The Court's decision in this consolidated appeal may affect *ParkerVision, Inc. v. Qualcomm Incorporated, et al.*, No. 6:14-cv-00687-PGB-KRS (M.D. Fla.), in which the same patent at issue here, U.S. Patent No. 6,091,940 ("the '940 patent") is asserted.

## STATEMENT OF ISSUES

The issues presented by ParkerVision's appeal are correctly identified in ParkerVision's opening Appeal Brief. PV Br. at 3-4.[1]

Qualcomm cross-appeals the Board's finding in the 1828 Nozawa IPR[2] that Qualcomm failed to prove the '940 patent's challenged method claims (independent method claim 25 and its dependent claims 26, 363-66, 368, 369, and

---

[1] Citations to "PV Br." are to the Opening Brief of Appellant ParkerVision, Inc. ("ParkerVision"), Dkt. No. 29 (Oct. 20, 2017).

[2] There are three Final Written Decisions from three IPRs at issue on appeal, IPR2015-1828 and IPR2015-1831, based on the Nozawa and Philips references ("the Nozawa IPRs") (Appx1-23; Appx46-65), and IPR2015-1829, based on the Ariie and Krauss references ("the Ariie IPR") (Appx24-45).

373) are unpatentable as obvious over Nozawa and Philips. Appx18-21. The issue presented in Qualcomm's cross-appeal is:

Whether the Board's finding that Qualcomm did not meet its burden of proving invalidity should be affirmed where the Board found as fact that Qualcomm failed to prove that the Nozawa references taught certain steps of the method claims, and on appeal Qualcomm does not dispute these findings or attempt to show that they are unsupported by substantial evidence.

## SUMMARY OF ARGUMENTS

**Qualcomm's Cross-Appeal of the 1828 Nozawa IPR:** Qualcomm's cross-appeal identifies no reason to reverse the Board's finding in the 1828 Nozawa IPR that Qualcomm failed to prove that the '940 patent's challenged method claims were unpatentable.

The Board correctly found that Qualcomm failed prove that Nozawa disclosed an oscillating signal configured so that it would cause a switch to generate a plurality of harmonics, as required by all of the challenged method claims. Qualcomm does not argue or attempt to establish that this finding of fact (which is fatal to both its IPR challenge to the '940 method claims and its cross-appeal), is not supported by substantial evidence.

Unable to challenge the Board's controlling findings of fact, Qualcomm's cross-appeal (which totals a mere three pages) attempts to create an appealable

issue of law. There is none: the Board correctly noted that because Nozawa did not disclose configuring an oscillating signal so as to generate a plurality of harmonics as required by the method claims, Qualcomm's arguments that the Nozawa oscillating signal could be so configured were insufficient to meet its burden. Instead, Qualcomm was required to show that such configuration and use of the oscillating signal was obvious, that a person of ordinary skill not only **could** configure the oscillating signal in this manner, but also that such a configuration **would** have been obvious to that person of ordinary skill. Qualcomm itself acknowledged that this was the correct question in its IPR Reply Brief, stating that "[t]he validity of the claims in this *inter partes* review turns on a single issue: whether it **would** be obvious to operate Nozawa's mixer in a manner that **would** generate the 'integer multiple' harmonics as required by the '940 patent." Appx292 (emphases added).

And on this issue, the Board correctly found that (1) Qualcomm had waived this obviousness theory by not including it in Qualcomm's Petition; and (2) Qualcomm's Petition identified no evidence supporting this obviousness theory: "[Qualcomm's] arguments merely show that the Nozawa chip **could**, if given the proper inputs, produce the required harmonics. The Petition does not speak to whether a person of ordinary skill **would** have any reason to do so." Appx18 (emphases in original).

**<u>ParkerVision's Appeal of the Nozawa IPRs</u>:** The same unchallenged findings of fact that compelled the Board to find the challenged **<u>method</u>** claims patentable also compelled it to find the corresponding challenged **<u>system</u>** claims patentable. Like the valid method claims, the challenged '940 patent's system claims also require an oscillating signal configured to cause gating and the generation of a plurality of harmonics. Moreover, Qualcomm's evidence and arguments on the system claims were identical to its arguments and evidence concerning the valid method claims, as Qualcomm conceded on appeal:

> The challenged apparatus and method claims recite essentially the same limitations, and Qualcomm used essentially the same evidence for both the apparatus and method claims.

QC Br. at 70.[3]

But despite finding that the method claims were patentable because of Qualcomm's failure to prove that Nozawa disclosed the claimed oscillating signal configured to cause gating and the generation of a plurality of harmonics, the Board inexplicably found that the system claims containing this same limitation were nonetheless **<u>un</u>**patentable. The Board did so only by improperly reading this required limitation out of the system claims. This construction is wrong as a

---

[3] Citations to "QC Br." are to the Response Brief of Cross-Appellants Qualcomm Atheros, Inc. and Qualcomm Incorporated ("Qualcomm"), Dkt. No. 35 (Jan. 16, 2018).

matter of law, and the Board's finding of unpatentability should therefore be reversed.

**<u>ParkerVision's Appeal of the Ariie IPR</u>:** The Board's decision that Qualcomm met its burden of proving the claims challenged in the Ariie IPR are unpatentable also should be reversed. In the Ariie IPR, the Board relied on and adopted Qualcomm's invalidity theory asserting that it would have been obvious to replace the Ariie mixer's oscillating signal with the Krauss oscillating signal to cause the Ariie FET to gate a signal as required by the challenged claims. But Qualcomm did not present this theory until its Ariie Reply Brief, and the Board therefore committed reversible error by basing its patentability decision on this new and untimely theory. And lack of due process aside, the Board's reliance on this theory is reversible error because Qualcomm did not even allege—much less identify the required substantial evidence proving—the necessary motivation to combine Ariie and Krauss in this manner.

## ARGUMENT

### I. <u>Qualcomm's Cross-Appeal</u>: The Board's Finding That Qualcomm Failed To Prove the Challenged Method Claims Unpatentable Should Be Affirmed

Qualcomm cross-appeals the Board's finding in the 1828 Nozawa IPR that Qualcomm failed to prove the '940 patent's challenged method claims (independent method claim 25 and its dependent claims 26, 363-66, 368, 369, and

373) were unpatentable as obvious over Nozawa and Philips. QC Br. at 70-72; Appx18-22.

Specifically, the Board found that Qualcomm failed prove that Nozawa disclosed an oscillating signal configured so that it would cause the switch to generate a plurality of harmonics, as required by all of the challenged method claims. Appx15-16; Appx18; Appx20-21; Appx636 at claim 25. This finding of fact is supported by substantial evidence, and the Court should therefore affirm the Board's decision concerning the patentability of method claims 25, 26, 363-66, 368, 369, and 373.

### A. The Applicable Standard of Review

The Board's factual finding that Qualcomm failed to prove that Nozawa discloses configuring and using an oscillating signal to generate a plurality of harmonics is reviewed for substantial evidence. *In re Giannelli*, 739 F.3d 1375, 1378-79 (Fed. Cir. 2014); *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *In re Kao*, 639 F.3d 1057, 1065 (Fed. Cir. 2011). It is "something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000) (citations omitted).

### B. Substantial Evidence Supports the Board's Finding That Qualcomm Failed To Prove That Nozawa Disclosed Configuring an Oscillating Signal To Generate a Plurality of Harmonics

As the Board found, and, as Qualcomm does not dispute on appeal, the '940 patent's claimed methods require that a local oscillator generate an oscillating signal having a frequency specially chosen to cause the switch to gate the baseband signal at a rate that produces a periodic signal having a plurality of harmonics. Appx18; Appx21; Appx602 at 2:6-19; QC Br. at 9-12. The Board also found—and Qualcomm does not dispute—that in the device disclosed by Nozawa, only oscillating signals with select frequencies will produce a periodic signal having harmonics that are the "integer multiple" type of harmonics required by the '940 patent. Appx15-16; Appx18; Appx292-295.

As the Board acknowledged in its Final Written Decisions, "[a]ccording to the '940 patent, '[t]he up-conversion is accomplished by controlling a switch with an oscillating signal, the frequency of the oscillating signal **being selected** as a sub-harmonic of the desired output frequency.'" *E.g.*, Appx4 (quoting Appx533 at Abstract) (emphasis added); *see also* QC Br. at 9 (factual background section of Qualcomm's Appeal Brief acknowledging and quoting the same). Accordingly, as the Board found, only **specially configured** oscillating signals will result in a periodic signal having the required plurality of harmonics. *See* Appx4.

Consistent with the Board's finding, Qualcomm's own description of the '940 patent on appeal, and the '940 patent's disclosure, the challenged method claims indisputably require an oscillating signal specially configured to gate a "reference signal" (*e.g.*, a baseband signal) and create "a periodic signal having a plurality of harmonics." *E.g.*, Appx636 at claim 25. The Board found that independent claim 25 is illustrative:

> 25. A method of communicating, comprising the steps of:
>
> (1) **<u>shaping an oscillating signal to create a string of pulses</u>** that is a function of said oscillating signal;
>
> (2) **<u>gating a reference signal at a rate that is a function of said string of pulses to create a periodic signal having a plurality of harmonics</u>**, said reference signal being a function of an information signal, and at least one of said plurality of harmonics being a desired harmonic; and
>
> (3) outputting said periodic signal, said periodic signal having an amplitude that is a function of said reference signal.

Appx636 at claim 25 (emphasis added); Appx5-6.

Although Qualcomm appeals the Board's decision concerning these method claims, its cross-appeal does not identify or address any of the foregoing claim limitations missing from the Nozawa reference. *See, e.g.*, QC Br. at 70-72. Nor does Qualcomm address the Board's controlling finding of fact that Qualcomm failed to prove that Nozawa discloses the foregoing required steps of configuring the oscillating signal so that it will cause the reference signal to be gated at a frequency rate that will produce the claimed plurality of harmonics. *See, e.g., id.*

For example, the Board found that Qualcomm failed to prove that Nozawa disclosed an oscillating signal that would cause the claimed gating to generate a plurality of harmonics, either explicitly or inherently. Appx15-16 ("Nozawa's disclosure that the output 'in principle' contains many harmonics does not convince us that the output actually, or necessarily, contains the integer multiple harmonics." (quoting Appx824)). Specifically, the Board found that it was "beyond dispute" that the Nozawa mixer could only produce a periodic signal having the claimed plurality of harmonics under certain operating conditions, *i.e.*, given certain oscillating and bias signals of particular frequencies input into the Nozawa mixer. Appx16-18. In addition, the Board found that Nozawa did not teach selecting an oscillating signal of a certain frequency to generate the claimed "plurality of harmonics," and that Qualcomm did not offer any evidence that selecting such an oscillating signal was obvious to one of skill in the art: "There is no relevant discussion, in either the Petition or [Qualcomm's expert's] Declaration, of the need for a person of ordinary skill in the art to select operating conditions that would cause Nozawa to generate a plurality of integer-multiple harmonics or why one of ordinary skill in the art would have done so." Appx20; *see also* Appx15-16; Appx18.

Accordingly, the Board found that "Qualcomm has not shown that Nozawa and Philips 4052 teach the claimed step of 'gating a reference signal … to create a

periodic signal having a plurality of harmonics' recited in claim 25 and, via, dependency, claims 26, 363-366, 368, 369, and 373." Appx21 (quoting Appx636 at claim 25). The Board therefore concluded that Qualcomm had failed to prove that any of the challenged method claims are unpatentable. Appx22.

Qualcomm does not address the foregoing findings of fact (which are fatal both to its IPR challenge to the '940 method claims and to its cross-appeal), and it does not argue or attempt to establish that these factual findings are not supported by substantial evidence. *See, e.g.*, QC Br. at 70-72.

As shown in the next two sections, Qualcomm could not reasonably do so because ample evidence supports the Board's findings that Qualcomm failed to prove that Nozawa discloses specially configuring the oscillating signal so that it will generate the claimed plurality of harmonics.

#### 1. Substantial Evidence Supports the Board's Finding That Nozawa Does Not Disclose the Required Plurality of Harmonics.

In construing all of the challenged claims (both method and system alike), the Board found that the patentees had specially defined "harmonic" and, consistent with that special meaning, construed and limited the meaning of "harmonic" to "'a frequency or tone that, when compared to its fundamental or reference frequency or tone, is an **integer multiple** of it … [and] includes the fundamental frequency as the first harmonic.'" Appx7 (quoting Appx204;

Appx206) (emphasis added). The parties did not contest this construction during the instituted IPR trials below, and Qualcomm does not now attempt to dispute in on appeal. *Id.*; *e.g.*, QC Br. at 7-8, 10.

But regarding the required plurality of harmonics, Qualcomm's Petition asserted only that "Nozawa expressly recognizes that its use of switches to gate incoming signals creates harmonics: '[B]ecause the method used to realize this system is switching, **it in principle includes many harmonics**.'" Appx5162-5164 (quoting Appx824) (emphasis added) (internal quotation marks omitted). Nowhere in Qualcomm's Petition did it allege or attempt to establish that the harmonics discussed in Nozawa were described as the "integer multiple harmonics" required by the '940 patent's definition of "harmonic" and the Board's resulting (and now undisputed) claim construction. Appx5162-5164.

Nor could Qualcomm reasonably do so because Nozawa does not define these "harmonics" or describe them as multiple integers of any particular frequency or reference signals. *See* Appx819-830. For example, Nozawa does not describe them as integer multiples of the "LO frequency" used to control the switches. *See id.*

The Board therefore correctly found that Nozawa did not disclose that its oscillating signal and switch results in the specially defined harmonics:

> In response, ParkerVision contends that Nozawa does not disclose expressly that its periodic signal contains a plurality of harmonics,

> because there is no evidence that the 'many harmonics' of Nozawa are the integer multiple harmonics required by the claims. On this point, we agree with ParkerVision. Nozawa's disclosure that the output 'in principle' contains many harmonics does not convince us that the output actually, or necessarily, contains the integer multiple harmonics.

Appx15-16 (quoting Appx824) (internal citations omitted).

Qualcomm does not now dispute this finding of fact or argue (much less establish) that it is unsupported by substantial evidence. *See, e.g.*, QC Br. at 70-72.

#### 2. Substantial Evidence Supports the Board's Finding That Nozawa Did Not Disclose Configuring an Oscillating Signal To Generate the Claimed Plurality of Harmonics.

Substantial evidence likewise supported the Board's finding that Qualcomm did not prove that Nozawa discloses configuring an oscillating signal to generate the claimed "plurality of harmonics" as required by all of the challenged method claims. Again, Qualcomm does not argue or attempt to prove otherwise; it cannot, because, as the Board detailed, Qualcomm failed to offer **<u>any</u>** evidence or argument on this issue in its Petition. Appx18-21.

The Board found that it was "beyond dispute" that the Nozawa mixer could only produce a periodic signal having the claimed plurality of harmonics under certain operating conditions, *i.e.*, given certain oscillating and bias signals of particular frequencies input into the Nozawa mixer. Appx16-17. In addition, the Board found that Nozawa did not teach selecting an oscillating signal of a certain frequency to generate the claimed "plurality of harmonics," and that Qualcomm

did not offer any evidence that selecting such an oscillating signal was obvious to one of skill in the art: "There is no relevant discussion, in either the Petition or [Qualcomm's expert's] Declaration, of the need for a person of ordinary skill in the art to select operating conditions that would cause Nozawa to generate a plurality of integer-multiple harmonics or why one of ordinary skill in the art would have done so." Appx20; *see also* Appx15-16.

There is therefore no dispute that substantial evidence supports the Board's factual finding that "Qualcomm has not shown that Nozawa and Philips 4052 teach the claimed step of 'gating a reference signal … to create a periodic signal having a plurality of harmonics' recited in claim 25 and, via, dependency, claims 26, 363-366, 368, 369, and 373. " Appx21 (quoting Appx636 at claim 25). The Board's decision upholding those method claims should therefore be affirmed, and Qualcomm's unsupported, three-page cross-appeal should be denied.

### C. Qualcomm Has Identified No Reversible Legal Error

Unable to refute the Board's controlling factual findings, Qualcomm attempts to create an appealable issue of law. There is none: although Qualcomm argues in its cross-appeal that the Board erred in requiring Qualcomm to show **actual** performance of the method claims, the Board in fact required no such thing. QC Br. at 70-71; Appx18-21.

Rather, the Board correctly noted that because Nozawa did not disclose configuring an oscillating signal so as to generate a plurality of harmonics as required by the method claims, Qualcomm's arguments that the Nozawa oscillating signal **could** be so configured were insufficient to meet its burden. Instead, Qualcomm was required to show that such configuration and use of the oscillating signal was obvious, that a person of ordinary skill not only **could** configure the oscillating signal in this manner, but also that such a configuration **would** have been obvious to that person of ordinary skill:

> On this point, Qualcomm's Petition is deficient. … [T]hese arguments merely show that the Nozawa chip **could**, if given proper inputs, produce the required harmonics. The Petition does not speak to whether a person of ordinary skill **would** have any reason to do so.

Appx18 (emphases in original). Indeed, this is how Qualcomm itself presented the issue (too late) in its IPR Reply: "The validity of the claims in this *inter partes* review turns on a single issue: whether it **would** be obvious to operate Nozawa's mixer in a manner that **would** generate the 'integer multiple' harmonics as required by the '940 patent." Appx292 (emphases added).

And on this issue, the Board correctly found that (1) Qualcomm had waived this obviousness theory by not including it in Qualcomm's Petition; and (2) Qualcomm's Petition identified no evidence supporting this obviousness theory. Appx18-21.

### 1. The Board Correctly Stated and Applied the Test for Invalidating Method Claims.

In requiring Qualcomm to show more than just that the Nozawa oscillating signal could be configured to produce the required plurality of harmonics, the Board applied the correct law and committed no legal error: "It is not enough that a claimed [method] step be 'capable' of being performed." *Cybersettle, Inc. v. National Arbitration Forum, Inc.*, 243 F. App'x 603, 606-07 (Fed. Cir. 2007) (unpublished).

For example, in *Liqwd, Inc. v. L'Oréal USA, Inc.*, Case No. 2017-2295, 2018 U.S. App. LEXIS 1078 at *6-9 (Fed. Cir. Jan. 16, 2018) (unpublished), this Court examined a method claim for bleaching hair, and the proper construction of one of the claim terms covering a chemical composition, *i.e.*, "hair coloring agent." *Id.* at *4. This Court held that, based on "the words of the claim standing alone," it was improper for a district court to construe "hair coloring agent" as a chemical composition merely being capable of causing a specific result (*i.e.*, coloring hair only when used in high enough concentrations in a mixture), when the patent clearly requires the specific result. *Id.* at *6-7. This Court noted that "[c]ontext is central in claim construction[,]" and in that case, "the method claims' focus on producing results suggests a focus on whether 'hair coloring' results from the mixture actually applied to hair." *Id.* (emphasis added). This Court thus held that the claim term "hair coloring agent" requires that "the colorant be one that

[actually] 'changes the color or tone of the hair it is applied to,' not merely that it could do so (if greatly increased in concentration)." *Id.* at *8-9 (emphasis added).

The same is true here: the method claims do not recite an oscillating signal that **could** be configured for "gating a reference signal at a rate that is a function of [the oscillating signal] to create a periodic signal having a plurality of harmonics." Appx636 at claim 25; Appx5-6. Rather, the claims explicitly recite the use of an oscillating signal that actually is configured to and does cause "gating a reference signal at a rate that is a function of [the oscillating signal] to create a periodic signal having a plurality of harmonics." Appx636 at claim 25; Appx5-6. The Board thus properly required Qualcomm to prove that such configuration use was either taught in, or obvious in light of, the Nozawa references. Appx18-21.

#### 2. The Board Correctly Found That Qualcomm Waived and Failed to Support Its Belated Obviousness Theory.

The Board correctly found that Qualcomm had failed to meet this burden. As discussed above, the Board correctly found as fact that Qualcomm failed to prove that Nozawa disclosed the required configuring and using an oscillating signal to generate a plurality of harmonics. Appx18-21. These findings are supported by substantial evidence and Qualcomm does not argue otherwise on appeal. *See* QC Br. at 70-72.

As to whether it would have been obvious to configure and use the Nozawa oscillating signal to generate a plurality of harmonics, the Board correctly found

that (1) Qualcomm had waived this obviousness theory by not including it in Qualcomm's Petition; and (2) Qualcomm's Petition identified no evidence supporting this obviousness theory. Appx18-21. As to waiver, the Board explained that Qualcomm improperly raised such obviousness arguments for the first time in its Reply Brief:

> ParkerVision objected to these arguments, because they allegedly were raised for the first time in Qualcomm's Reply. We agree. While the evidence cited by Qualcomm was not new to the record, we consider the arguments to be a new theory of unpatentability, improperly raised for the first time in the Reply.
>
> ***
>
> From the Petition, it is apparent that Qualcomm's theory of unpatentability rested on the assertion that Nozawa **taught** a plurality of harmonics. … There is no relevant discussion, in either the Petition or [Qualcomm's expert's] Declaration, of the need for a person of ordinary skill in the art to select operating conditions that would cause Nozawa to generate a plurality of integer-multiple harmonics or why one of ordinary skill in the art would have done so.
>
> ***
>
> For these reasons, we do not rely on Qualcomm's late-arising theory … that a person of ordinary skill in the art would have operated Nozawa in a manner to generate the claimed plurality of harmonics.

Appx19-21 (emphasis in original).

As to Qualcomm's failure to prove that it would have been obvious to configure and use the Nozawa oscillating signal so as to create the required plurality of harmonics, the Board correctly found that Qualcomm had presented **no** supporting evidence in its Petition:

> On this point, Qualcomm's Petition is deficient. The Petition cites to Nozawa's recitation that its periodic signal 'in principle includes many harmonics,' and also [expert] testimony regarding the Maas equation. Pet. 45 (citing Ex. 1003, 20). But as discussed above, these arguments merely show that the Nozawa chip **could**, if given proper inputs, produce the required harmonics. The Petition does not speak to whether a person of ordinary skill **would** have any reason to do so.
>
> ***
>
> There is no relevant discussion, in either the Petition or [Qualcomm's expert's] Declaration, of the need for a person of ordinary skill in the art to select operating conditions that would cause Nozawa to generate a plurality of integer-multiple harmonics or why one of ordinary skill in the art would have done so.

Appx18-20 (quoting Appx824) (emphases in original).

So, in sum, Qualcomm has identified no basis for reversing the Board's determination that Qualcomm failed to prove the challenged method claims unpatentable. The Board found as fact that Qualcomm failed to prove that the Nozawa references disclosed required steps of configuring and using an oscillating signal to create a plurality of harmonics; these finding are supported by substantial evidence, and Qualcomm does not argue otherwise. Appx18-21; QC Br. at 70-72. Qualcomm's only attempt at identifying a legal error is based on a misstatement of the Board's decision: the Board correctly stated and applied the obviousness test, and it correctly found that Qualcomm had not identified or presented sufficient evidence to render the claims unpatentable in its Petition.

## II. <u>ParkerVision's Appeal</u>: The Nozawa IPRs

Like the valid method claims, the challenged '940 patent's system claims[4] also require an oscillating signal configured to cause gating and the generation of a plurality of harmonics. *See, e.g.*, Appx635-636 at claims 4, 21, 22. Moreover, Qualcomm's evidence and arguments on the system claims were identical to its arguments and evidence concerning the valid method claims, as Qualcomm conceded on appeal:

> The challenged apparatus and method claims recite essentially the same limitations, and Qualcomm used essentially the same evidence for both the apparatus and method claims.

QC Br. at 70.

But despite finding that the method claims were patentable because of Qualcomm's failure to prove that Nozawa disclosed the claimed oscillating signal configured to cause gating and the generation of a plurality of harmonics, the Board inexplicably found that the system claims containing this same limitation were nonetheless **<u>un</u>**patentable. The Board did so only by improperly reading this required limitation out of the system claims. This construction is wrong as a

---

[4] The '940 patent system claims challenged in the Nozawa IPRs are independent claim 4 (and its dependent claims 100, 113-16, 118, and 119), independent claim 21 (and its dependent claims 281, 283-86, 288, 289, and 293), and independent system claim 22 (and its dependent claims 23, 309-12, 314-15, and 319).

matter of law, and the Board's finding of unpatentability should therefore be reversed.

### A. The Board Committed Legal Error By Finding That the Challenged System Claims Are Unpatentable

#### 1. The Board Found That Qualcomm Did Not Prove That Nozawa Disclosed an Oscillating Signal Configured To Generate a Plurality of Harmonics As Required By the System Claims.

The '940 patent system claims challenged in the Nozawa IPRs included limitations similar to the affirmed method claims, including, for example, "a pulse shaping module to receive an oscillating signal and to output a shaped string of pulses" and "a switch module to receive said shaped string of pulses … wherein said shaped string of pulses causes said switch module to gate said bias signal and thereby generate a periodic signal having a plurality of harmonics." *See, e.g.*, Appx636 at claim 21.

As with the method claims discussed above, in connection with the challenged system claims, the Board found that Qualcomm had not proven that Nozawa disclosed such an oscillating signal—one configured to cause the switch to gate and generate a plurality of harmonics. *E.g.*, Appx15-17; Appx18. For example, the Board found that Qualcomm failed to prove that Nozawa disclosed an oscillating signal that would cause the claimed gating to generate a plurality of harmonics, either explicitly or inherently. Appx15-16; Appx17 (internal citations

omitted). The Board found that it was "beyond dispute" that the Nozawa mixer could only produce a periodic signal having the claimed plurality of harmonics under certain operating conditions, *i.e.*, oscillating and bias signals of particular frequencies. Appx16-17. In addition, the Board found that Nozawa did not teach selecting an oscillating signal of a certain frequency to generate the claimed "plurality of harmonics," and that Qualcomm did not offer any evidence that selecting such an oscillating signal was obvious to one of skill in the art. Appx20; *see also* Appx15-16.

Again, Qualcomm does not address these findings of fact, and it does not argue or attempt to establish that these factual findings are not supported by substantial evidence. *See, e.g.*, QC Br. at 39, 64-65.

#### 2. The Board Committed Reversible Legal Error By Reading the Oscillating Signal/Plurality of Harmonics Limitations out of the System Claims.

All of the challenged system claims require what the Board found was indisputably **<u>not</u>** disclosed by the Nozawa references: an oscillating signal configured to cause the switch to gate a bias signal (*e.g.*, a baseband signal) and thereby generate a periodic signal having a plurality of harmonics. For example:

> 4. An apparatus for frequency up-conversion, comprising:
>
> **<u>a switch module that receives an oscillating signal</u>** and a bias signal, wherein **<u>said oscillating signal causes said switch module to gate said bias signal and thereby generate a periodic signal having a</u>**

> **plurality of harmonics**, said periodic signal having an amplitude that is a function of said bias signal; and
>
> a filter coupled to said switch module to isolate at least one of said plurality of harmonics.

Appx635 at claim 4 (emphasis added); Appx50-51.

> 21. An apparatus for frequency up-conversion, comprising:
>
> **a pulse shaping module to receive an oscillating signal and to output a shaped string of pulses** that is a function of said oscillating signal;
>
> **a switch module to receive said shaped string of pulses and a bias signal, wherein said shaped string of pulses causes said switch module to gate said bias signal and thereby generate a periodic signal having a plurality of harmonics**, said bias signal being a function of an information signal, said periodic signal having an amplitude that is a function of said bias signal; and
>
> a filter coupled to said switch module to isolate one or more desired harmonics of said plurality of harmonics.

Appx636 at claim 21 (emphasis added); Appx5-6.

> 22. An apparatus for communicating comprising:
>
> (a) a transmitting subsystem comprising:
>
> > (1) **a switch module having** a first input connected to a bias signal, **a control input connected to a control signal**, and **an output generating a periodic signal, wherein said control signal is an oscillating signal**, said control signal **causing said switch module to gate said bias signal**, said periodic signal having an amplitude that is a function of said bias signal, and **said periodic signal being a harmonically rich signal comprised of a plurality of harmonics**, and
> >
> > (2) a filter to accept said harmonically rich signal and to output one or more desired harmonics from said plurality of harmonics; and
>
> (b) a receiving subsystem.

Appx636 at claim 22 (emphasis added); Appx50-51.

In light of these limitations, the Board's finding of fact that Qualcomm failed prove that Nozawa disclosed an oscillating signal configured to cause the Nozawa switch to generate a plurality of harmonics compels the conclusion that Qualcomm failed to invalidate not only the method claims, but the challenged system claims as well. *See, e.g., Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 1997) ("[B]ecause no combination of prior art references for obviousness describes [all elements] recited in the claim, the jury's obviousness verdict must also fall."). But the Board erroneously construed these claims so that the claimed systems do not actually require such an oscillating signal, reading these limitations completely out of the claims. *See, e.g.*, Appx17.

Instead, under the Board's construction, the Nozawa references did not need to disclose or make obvious the claimed oscillating signal having a frequency that would cause the alleged Nozawa switch to generate a signal having "integer multiple" harmonics, Nozawa mixer only had to be "**<u>capable</u>**" of receiving such an oscillating signal that thereby generates a signal having such integer multiple harmonics: "In other words, the structure of Nozawa is *capable* of producing a signal that satisfies the limitations of the claim" and that is sufficient to show unpatentability. Appx17 (emphasis in original); Appx61 (same). This construction is reversible legal error.

### a. Federal Circuit Precedent Holds That a Claim Element's Required Function May Not Be Read Out of the Claim.

According to the Board's Final Written Decision, that the challenged system claims required the oscillating signal to cause the switch to gate a periodic signal and generate a plurality of harmonics could be ignored because, in apparatus claims, such functional language is given no weight and should be ignored. *See* Appx17. This is contrary to this Court's holdings that "apparatus claims may appropriately use functional language" and it is improper to read such language out of the claims. *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1380-81 (Fed. Cir. 2011) ("*Typhoon*"); *Giannelli*, 739 F.3d at 1380 ("In the context of the claimed rowing machine, however, the mere capability of pulling the handles is not the inquiry that the Board should have made." (emphasis added)).

For example, in *Typhoon*, this Court rejected arguments that apparatus claims cover a device merely if the device could be configured to perform the functional language of the apparatus claims, rather than actually being so configured. 659 F.3d at 1380-82. In *Typhoon*, the asserted patent claim included apparatus elements defined by functional language, including a "memory for storing at least one data collection application," and "a processor for executing said data collection application." *Id.* The district court construed the claim as "requiring that a device, to be covered by the claim, actually performs, or is

configured or programmed to perform, each of the functions stated in the claim," and granted summary of judgment of noninfringement based on that construction. *Id.* at 1380.

The plaintiff appealed, arguing—just as the Board does here—that "the claims are not method claims, and that it is irrelevant if the [recited] function is actually performed by the device, [so long as] the device can be programmed or configured to perform the function." *Id.* at 1380. Thus, according to the plaintiff, the defendant's accused device infringed and met these elements "if the device has the **capability** of being configured or programmed to perform the stated function, although not so structured in the device provided by a defendant." *Id.* at 1380 (emphasis added).

This Court rejected such arguments as legally incorrect and upheld the district court's construction. *Id.* at 1380-82. For example, this Court held that the claim element "memory for storing at least one data collection application" "requires that the memory is actually programmed or configured to store the data collection application," not just that the memory was capable of being so programmed or configured. *Id.* at 1380-81. Likewise, this Court held that the claim element "'processor for executing said data collection' requires that the 'recited function must be performed'" and is not met where "the device has the **capability** of being programmed or configured to execute the data collection

application … even if it is not so programmed or configured." *Id.* at 1381 (emphasis added).

As the Court explained, such functional requirements may not be read out of the claims, and the mere capability of an apparatus or structure to be configured to perform the stated function is insufficient, where "an apparatus does not perform the function stated in the claim unless the apparatus is specifically so programmed or configured." *Id.* at 1380-81.

Such is the case here: the Board found as fact (and Qualcomm did not and does not dispute) that only an oscillating signal configured in a certain manner (such as to have a certain shape and frequency) will cause the switch to gate and generate the plurality of harmonics as claimed in all of the challenged system claims. Appx15-16; Appx17; QC Br. at 64-66. The Board found that Nozawa did **not** teach configuring an oscillating signal in this manner. Appx15-16; Appx17; *see also* Appx20. It was thus legal error to construe the claims so that they cover the Nozawa system merely because the Nozawa oscillating signal was **capable** of being so configured. *Typhoon*, 659 F.3d at 1380-81; *see also, e.g., Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1117-18 (Fed. Cir. 2002) (rejecting the argument that "that infringement may be based upon a finding that an accused product is **merely capable** of being modified in a manner that infringes the claims of a patent") (emphasis added).

#### b. Qualcomm's Cited Decisions Do Not Support the Board's Erroneous Claim Construction.

Qualcomm argues that the Board was correct, that the functional language of apparatus claims may be summarily read out and ignored, but cites no support for this argument. *See* QC Br. at 64, 66. Each case that Qualcomm cites stands for the unremarkable proposition that where a prior art reference or combination meets all elements of a claim, the claim is invalid, and each case is distinguishable from the facts here, where Nozawa undisputedly does **not** meet all of the claimed elements.

Qualcomm's reliance on *Unwired Planet, LLC v. Google, Inc.*, 841 F.3d 995, 1002 (Fed. Cir. 2016), QC Br. at 64, is misplaced. In *Unwired Planet*, the Federal Circuit found that "[t]he claims [covering prioritization of search results] only require using [any] prioritization information that *results* in a farther-over-nearer order [*i.e.*, search results farther away in location receiving priority over nearer search results]." 841 F.3d at 998, 1002 (emphasis in original). Thus, the "claimed **result**, where a farther…location is given priority over a nearer…location, could result from **many prioritization schemes that do not depend on location** [which is just one example of prioritization information]." *Id.* at 1002 (emphasis added). The Federal Circuit held that a prior art reference using alphabetical order sufficed to invalidate the claim, because the alphabetical prioritization scheme would sometimes result in search results farther away in

location receiving priority over nearer search results. *Id.* Here, by contrast, the claimed result of the '940 patent **<u>does depend</u>** on a specific cause, *i.e.*, a local oscillating signal with a special frequency that causes a switch to gate a baseband signal thereby producing an output signal with a plurality of harmonics of the fundamental frequency of the oscillating signal. *See, e.g.*, Appx635-636 at claims 4, 21, 22.

*Hewlett-Packard v. Mustek Sys.*, 340 F.3d 1314, 1326 (Fed. Cir. 2003) likewise does not support Qualcomm's argument that the functional language of apparatus claims may be summarily read out and ignored. QC Br. at 64, 66. First, the claim at issue in *Mustek* was a method claim, not an apparatus claim. *Id.* at 1323-33. Second, the Court did not read out and ignore the functional language of the claimed method, but found that it was specifically taught by the asserted prior art. *Id.* at 1323-33. The opposite is true here.

In *Mustek*, the relevant method claim required a series of functional steps performed by a scanner, one of the steps requiring "performing a final scan of a portion of the picture which corresponds to the portion of the preview scan image to produce a final scan image[.]" *Id.* at 1323, 1326. There was no dispute that the prior art disclosed a setting of the device such that this step was performed. *Id.* at 1326. The patentee argued that the limitation was nonetheless not taught because there was another setting in which the step was not performed: "merely changing

one setting on the Microtek device causes it to behave in a [different] manner." *Id.* (internal quotation marks and citations omitted). But the Court correctly rejected this argument because "[j]ust as an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes, a prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches that aspect of the invention." *Id.* (internal quotation marks and citations omitted).

*Mustek* thus has no import here. In *Mustek*, the prior art actually provided a configuration so that the method step was performed. *Id.* In contrast, here, the Board correctly and indisputably found that Nozawa does not describe configuring the oscillating signal so that it will cause the switch to gate and generate a plurality of harmonics. Appx15-16; Appx18. Accordingly, this is not a situation where, as in *Mustek*, the prior art described more than one settings, **<u>some of which</u>**, but not all, necessarily performed the claimed method. Rather, Nozawa does not describe **<u>any</u>** setting of the oscillating signal that will meet the limitations required in the challenged claims. Appx15-16; Appx18.

Next, Qualcomm cites to *In re Michlin*, 256 F.2d 317, 320 (C.C.P.A. 1958). QC Br. at 66. In *Michlin*, the Court upheld the patentability of <u>method claims</u> 94 and 95, "each of which includes the step of applying electric energy of different potentials to opposite sides of the luminescent layer, such potentials…being sufficient '…to effect a luminescent image.'" *Id.* at 319. Apparatus claim 97,

similar to method claims 94 and 95, concluded with the functional statement "so that on impressing electric energies in sufficient differences in potentials…there is effected…through the layer of phosphors to produce a luminescent image[.]" *Id.* at 318, 320.

In reviewing apparatus claim 97, the Court noted that "[w]hile 35 U.S.C. 112 now provides that an element of a combination may be defined as a means for performing a specified function, it does not contemplate the allowance of a combination claim **solely on the basis of a final functional statement** of the kind included in claim 97[,]" and that the inventive concept in the final functional statement of claim 97 is already "protected by the allowance of claims 94 and 95." *Id.* at 320 (emphasis added). But here, the missing limitation in question is not some "final functional statement," it is a structural limitation, an oscillating signal specially configured to perform a particular function. In contrast to *Michlin*, ParkerVision is not arguing that the challenged system claims of the '940 patent are patentable over other method claims solely because of a final functional statement which "is, in effect, a method limitation." *Id.* Instead, Qualcomm indisputably failed to prove and identify an actual limitation of the claims, an oscillating signal to cause a switch module to gate a bias signal and thereby generate a periodic signal having a plurality of harmonics.

Finally, Qualcomm cites to *Cisco Sys. v. Lee*, 557 F. App'x. 963, 970 (Fed. Cir. 2014) (unpublished). QC Br. at 66. As an initial matter, Qualcomm's brief provides a parenthetical stating that the Federal Circuit cited to *Hewlett-Packard v. Bausch & Lomb*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) in its decision to support the proposition contained in a quote from *Michlin*. QC Br. at 66. This is not correct. Not only is the quote from *Michlin*, as explained above, taken out of context and does not support Qualcomm's incorrect view of the law, but the Federal Circuit never cited to *Hewlett-Packard v. Bausch & Lomb*, let alone cited to it in support of Qualcomm's misapprehension. In *Cisco*, the Federal Circuit affirmed the PTAB's claim construction of the claim term "telephone call" and noted that the PTAB cited to *Hewlett-Packard v. Bausch & Lomb* in the PTAB's decision.[5] *Cisco*, 557 F. App'x. at 970.

On the merits, in *Cisco*, the relevant claims required maintaining a communication connection for a telephone call (also referred to as "data transfer with real-time properties"). *Id.* *Cisco* simply stands for the unremarkable proposition that, for the contested claims of the patent-at-issue, the Board properly determined that the claim term "**telephone call**" requires "only 'a structure

[5] ParkerVision addressed and distinguished *Hewlett-Packard v. Bausch & Lomb* in its Opening Brief at 56-57.

**<u>capable of performing the function' of sustaining a telephone call</u>**[.]" *Id.* (emphasis added). The question of whether or not the claimed apparatus was directed to capability was not at issue. *Id.* Thus, this case also does not stand for the proposition that Qualcomm misapprehends, *i.e.*, that all apparatus claims merely require the capability of performing certain claimed functions.

**B. The Board's Untimely "Capable of" Construction and Theory Denied ParkerVision Due Process in Violation of PTAB's Controlling Rules, and Qualcomm Has Identified No Timely Assertion of This Construction and Theory in Its Petitions or the Board's Institution Orders.**

Not only is the Board's claim construction wrong, it was untimely, improperly violating PTAB's own rules and denying ParkerVision due process. *See* PV Br. at 43-45. As the Board itself acknowledged, it may not base its patentability decisions on evidence and theories not presented in the initial Petition:

> An *inter partes* review trial before the Board is a formal adjudication under the Administrative Procedure Act; as such, the parties to the trial are guaranteed certain procedural protections. Significant among these protections is the parties must be given notice of the "'matters and facts asserted,'" and the opportunity to meaningfully respond. For this reason, the United States Court of Appeals for the Federal Circuit has held that we may not base our patentability decision on late-arising factual assertions or theories.

Appx19 (internal citations omitted); *see also* PV Br. at 43-44.

But as established in ParkerVision's opening Appeal Brief, the foregoing "capable of" construction on which the Board based its unpatentability

determination was **not** presented in Qualcomm's Petitions. *See* PV Br. at 45-47. Nor was it presented in the Board's Institution orders. *See* PV Br. at 45-46. ParkerVision was therefore denied due process and the ability to address this claim construction and invalidity theory in ParkerVision's Patent Owner Responses. Indeed, Qualcomm did not even belatedly raise this construction in its Reply Briefs. *See* PV Br. at 47-48. Instead, the Board raised the construction for the first time in its Final Written Decisions, improperly precluding ParkerVision from ever responding to or opposing the construction. *See* PV Br. at 46-49.

In Qualcomm's Appeal Brief, it devotes six pages to a section titled "The Board's decision did not rely on an untimely claim construction," ostensibly trying to refute the ParkerVision's evidence that the Board improperly relied on an untimely "capable of" construction and theory. QC Br. at 65-70. But not once in this section does Qualcomm even allege that the Board's "capable of" theory and construction was ever raised in Qualcomm's Petition, the Board's Institution Orders, or even in Qualcomm's Replies (which would have been too late in any event), much less actually identify the theory and construction in any of those pleadings. *Id.*

It is thus undisputed that the Board based its patentability decision on a theory and construction not presented in the Petitions or the Institutions Orders. The Board's patentability decisions therefore denied ParkerVision the opportunity

to respond, were improper, and should be reversed. *See, e.g.*, C.F.R. § 42.23(b); *In re NuVasive, Inc.*, 841 F.3d 966, 969-73 (Fed. Cir. 2016) (holding that it is improper for the Board to base an unpatentabiliy decision on a theory not identified in the Petition because the patent owner is denied the opportunity to respond); *Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016) ("Unlike district court litigation—where parties have greater freedom to revise and develop their arguments over time and in response to newly discovered material—the expedited nature of IPRs bring with it an obligation for petitioners to make their case in their petition to institute."); *Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1301 (Fed. Cir. 2016) (a patent owner must be given adequate notice of the unpatentability theories and evidence asserted and at issue, so that it may rebut those theories and evidence).

## III. ParkerVision's Appeal: The Ariie IPR

The Board's decision in the Ariie IPR that Qualcomm proved that independent system claim 1 (and its dependent claims 2, 81-84, 86, 88-91, 93, and 94) and independent system claim 18 (and its dependent claims 251-54, 256, 258-61, 263, and 264) were unpatentable should be reversed because the Board relied on two alternative theories, each of which is procedurally untimely and substantively erroneous.

### A. Qualcomm Does Not Attempt To Support or Rely on the Board's Own Untimely and Legally Incorrect Invalidity Theory.

In the Ariie Final Written Decision, the Board offered its own alternate unpatentability theory—never forwarded by Qualcomm, in its Petition or otherwise—asserting that "Ariie's FET is **capable of** being used as a 'switch module' that 'gates' if it is driven with the proper input [and] [t]his is sufficient to satisfy the limitations." Appx38 (emphasis added).

As established in ParkerVision's Opening Brief, because this theory was never timely raised by Qualcomm and ParkerVision was never given the opportunity to rebut it, the Board committed legal error by relying on it for its patentability decision. PV Br. at 39-40, 51.

Moreover, even if not untimely and improper, the Board's theory is wrong as matter of law because (like the Board's Nozawa system claims theory discussed above) it hinges on the Board's improper construction of the challenged claims to improperly read out the limitations admittedly not disclosed by Ariie. PV Br. at 39-40, 60-61.

Qualcomm's Appeal Brief does not address or dispute any of the foregoing: Qualcomm does not dispute, for example, that this theory was not presented in its Petition or Reply, nor does Qualcomm attempt to support the Board's "capable of" construction in the Ariie IPR. *See, e.g.*, QC Br. at 44-53.

Instead, Qualcomm's Appeal Brief attempts only to support its own untimely and unsupported Ariie theory, which is addressed in the next section. *See, e.g.*, QC Br. at 44-57.

### B. Qualcomm's Theory Was Untimely and Unsupported

In addition to the Board's own improper invalidity theory, the Board also relied on and adopted Qualcomm's invalidity theory asserting that it would have been obvious to replace the Ariie mixer's oscillating signal with the Krauss oscillating signal to cause the Ariie FET to gate a signal as required by the challenged claims. But Qualcomm did not present this theory until its Ariie Reply Brief, and the Board therefore committed reversible error by basing it patentability decision on this new and untimely theory. Moreover, lack of due process aside, the Board's reliance on this theory is reversible error because Qualcomm did not even allege—much less identify the required substantial evidence proving—the necessary motivation to combine Ariie and Krauss in this manner.

#### 1. Qualcomm's Theory Was Not Raised until Its Reply Brief.

##### a. Qualcomm's Petition Never Identified the Krauss Oscillating Signal As Causing the Ariie FET To Gate.

As Qualcomm's Ariie IPR Petition acknowledged, all of the challenged claims require two switch modules, each of which receives an oscillating signal to cause the switch module to gate a bias (baseband) signal. Appx2978-2983; Appx2991; Appx2997. Qualcomm asserted in its Ariie Petition that the claimed

"oscillating signal **causes** [the] switch module to gate [the] bias signal" limitation was explicitly disclosed by the **Ariie** mixer design, including the Ariie oscillating signal and the Ariie FET. Appx2991 (emphasis added); Appx2995-2996.

But once ParkerVision's Patent Owner's Response established that Qualcomm's Petition had identified no description in Ariie that FET Q1 is used "to gate" a signal under the materially undisputed correct construction of "to gate" (Appx3158-3160), Qualcomm switched gears, advancing a brand new theory in its Reply Brief. In Qualcomm's Reply, it argued for the first time that it would have been obvious to substitute an oscillating signal from Krauss for the earlier alleged oscillating signal from Ariie, and that the **Krauss** oscillating signal would cause the Ariie FET to gate a signal as required by the challenged claims. Appx3183-3187.

But this theory was never presented in Qualcomm's Petition, thereby precluding ParkerVision from taking discovery or presenting evidence and arguments on it. *See, e.g.*, Appx2994; Appx2995-2996. Rather, the Petition identified **only** the theory refuted in ParkerVision's Patent Owner Response, the same theory that Qualcomm subsequently **dropped** in its Reply and on which the Board did **not** base it Final Written Decision.

Specifically, the Petition identified the **Ariie** oscillating signal (not a Krauss oscillating signal) as the one that supposedly caused the claimed switch to gate a

signal in Qualcomm's proposed combination. Appx2995-2996. According to the Petition, (and as illustrated in Qualcomm's annotated version of Ariie Figure 1, reproduced below), Ariie's data signal $S_S$ (combined with DC voltage $V_{CC}$) is the claimed bias signal; its carrier signal $S_C$ is the claimed oscillating signal; its FET Q1 is the claimed switch module; and the **Ariie** carrier signal $S_C$ (oscillating signal) causes the FET Q1 (switch module) "to gate" the data signal $S_S$ (bias signal):

> **Ariie discloses gating the first bias signal**. … **Ariie discloses that the carrier signal $S_C$ (the recited "first oscillating signal") causes FET Q1 (the recited "first switch module") to "gate"** the combined signal $S_S$ and DC voltage $V_{CC}$ (the recited "first bias signal").

Appx2995-2996 (emphasis added).

**Ariie Fig. 1, Annotated**




Appx2993.

At no point in its Petition did Qualcomm ever assert that, in its proposed combination, **Krauss** oscillating signals are used to cause the Ariie FET to gate a signal. *See, e.g.*, Appx2994-2996. And nowhere in the Petition did Qualcomm assert (much less identify evidence showing) that it would have been obvious to replace the purported oscillating signal of Ariie with a Krauss oscillating signal so that the Ariie FET will in fact "gate" the combined signal $S_S$ and DC voltage $V_{CC}$, rather than simply mixing those signals. *See, e.g.*, Appx2994-2996.

**b. Qualcomm Identifies No Assertion in Its Ariie IPR Petition That Identified the Krauss Oscillating Signal As Causing the Ariie FET To Gate.**

Qualcomm devotes 18 pages of its Appeal Brief to argue that its theory that it would have been obvious to use the Krauss oscillating signals to cause the Ariie FET to gate a signal was presented "with particularity" in its Petition as required. 37 C.F.R. § 42.23(b); *see, e.g.*, QC Br. at 16-23, 44-53. But nowhere does Qualcomm ever identify a passage in its Petition asserting that, in its proposed combination, **Krauss** oscillating signals are used to cause the Ariie FET to gate a signal. *See, e.g.*, QC Br. at 16-23, 44-53.

To the contrary, in the Petition, only the **Ariie** oscillating signal is asserted as being used to cause the Ariie FET to gate a signal. *See, e.g.*, Appx2994; Appx2995-2996. Indeed, Qualcomm does not dispute that the Board was wrong when it concluded that the Ariie Petition stated that "Gate G of Ariie's FET Q1

would receive" "'Oscillating Signal D' of Krauss' Figure 16-3(c)" (Appx36 at n.5) because the cited Petition passage merely asserts that Krauss generally describes that the **Krauss** mixer, **not** the **Ariie** mixer, will receive the Krauss oscillating signal D: "**The top mixer in Krauss** Fig. 16-3(a) receives first oscillating signal 'D'." Appx2994.

Unable to rely on the Board's citation or to identify any explicit assertion in the Petition that the Krauss oscillating signal would be used to cause the Ariie FET to gate a signal, Qualcomm essentially argues that in hindsight, it gave enough clues that ParkerVision should have been able to guess that this unspoken theory (and not the theory explicitly stated in Qualcomm's Petition) was Qualcomm's real invalidity grounds. For example:

- **Qualcomm's "Yellow Signal" Clue**: In attempting to rewrite what it actually asserted in its Ariie IPR Petition, Qualcomm now argues, for the first time, that the yellow oscillating signal depicted in the annotated version of Ariie Fig. 1 was intended to be the same yellow oscillating signal depicted in the annotated Krauss figure, arguing that the Ariie Fig. 1 "shows the continuation of [Krauss's Signal D's] yellow 'First Oscillating Signal' path into Ariie's FET mixer." QC Br. at 46 (citing nothing) (emphasis added).

**Ariie Fig. 1, Annotated**




But the Petition says no such thing and Qualcomm cites to no such description or assertion in its Petition—nowhere in the Petition does Qualcomm state that the yellow annotated signal in Ariie Figure 1 is the oscillating signal from Krauss, not Ariie. To the contrary, the Petition explicitly annotated and pointed to the **<u>Ariie</u>** carrier signal $S_C$ in the annotated Ariie Figure 1 as the yellow "First Oscillating Signal" and expressly asserted that it was the **<u>Ariie</u>** oscillating signal that caused the Ariie FET to gate a signal in Qualcomm's proposed combination:

> **<u>Ariie discloses gating the first bias signal</u>**. … **<u>Ariie discloses that the carrier signal $S_C$ (the recited "first oscillating signal") causes FET Q1 (the recited "first switch module") to "gate"</u>** the combined signal $S_S$ and DC voltage $V_{CC}$ (the recited "first bias signal").

Appx2995-2996 (emphasis added); Appx2993.

- **<u>Qualcomm's "Substitute" Clue</u>:** Qualcomm also argues that ParkerVision should have divined Qualcomm's unstated obviousness theory and combination because Qualcomm's Petition asserted "'it would have been obvious to a POSA to substitute a mixer like that in Ariie Fig 1. for each double balanced mixer in Krauss Fig. 16-3(a).'" QC Br. at 48 (quoting Appx2994). But as depicted in Figure 1, as described in Ariie, and as described in Qualcomm's own Petition, the mixer of Figure 1 included the FET Q1 (the purported switch module) **<u>and</u>** carrier signal $S_C$ (the originally purported oscillating signal causing the FET to gate):

**Ariie Fig. 1, Annotated**




Appx2993. Indeed, Qualcomm's latest interpretation of its Petition once again ignores that Qualcomm's Petition itself explicitly identified the Ariie oscillating

signal as part of the Ariie mixer and as the claimed oscillating signal to cause the switch to gate:

> **<u>Ariie discloses gating the first bias signal</u>**. … **<u>Ariie discloses that the carrier signal $S_C$ (the recited "first oscillating signal") causes FET Q1 (the recited "first switch module") to "gate"</u>** the combined signal $S_S$ and DC voltage $V_{CC}$ (the recited "first bias signal").

Appx2995-2996 (emphasis added); Appx2994.

Consistent with this explicit statement and identification of the Ariie oscillating signal as the one used to cause the Ariie FET to gate a signal in the proposed combination, at no point in its Petition does Qualcomm ever assert that, in its proposed combination, **<u>Krauss</u>** oscillating signals are used to cause the Ariie FET to gate a signal. *See, e.g.*, Appx2994-2996.

- **<u>Qualcomm's "Out of Phase" Clue</u>:** Qualcomm also argues that although it explicitly identified the **<u>Ariie</u>** oscillating signal causing the Ariie FET to gate a signal as satisfying the claimed "oscillating signal **<u>causes</u>** [the] switch module to gate [the] bias signal" limitation, ParkerVision nonetheless should have guessed that Qualcomm really intended to rely on the Krauss oscillating signal because of Qualcomm's arguments concerning a different limitation in a dependent claim. QC Br. at 51-52.

Specifically, dependent claim 2 requires that a first oscillating signal and a second oscillating signal have "substantially the same frequency and are out of phase with each other by substantially 90°." Appx3003. Qualcomm's Petition

argued that it was obvious to make the first and second oscillating signals (identified earlier in the Petition as the Ariie oscillating signals) have the same frequency out of phase with each other by substantially 90º as required by claim 2 because Krauss disclosed oscillating signals with these characteristics. *See* Appx3003.

Qualcomm contends that this obviousness argument "expressly tie[s] Signals D and E to the claimed first and second oscillating signals." QC Br. at 51. Again, Qualcomm attempts to rewrite its own IPR Petition. But Qualcomm again identifies no assertion in its Petition that the Krauss oscillating signals should be used instead of and in place of the Ariie oscillating signal in the proposed combination. Rather, this dependent claim 2 argument merely asserts that it would have been obvious to add these particular features (frequency and phase) of the Krauss oscillating signals (frequency and phase) to the Ariie oscillating signals. *See* Appx3003.

In sum, Qualcomm (and the Board) identified no passage in Qualcomm's Ariie Petition asserting that once the Krauss mixers have been substituted with the Ariie mixer design, it would have been obvious to replace the Ariie mixer's oscillating signal with the Krauss oscillating signal to cause the Ariie FET to gate a signal as required by the challenged claims. Accordingly, ParkerVision was denied the opportunity to take discovery on, present evidence rebutting, or submit

arguments opposing this theory, and it was reversible legal error for the Board to base its Ariie unpatentability decision on this new ground. *See, e.g.*, C.F.R. § 42.23(b); *In re NuVasive, Inc.*, 841 F.3d at 969-73; *Intelligent Bio-Systems*, 821 F.3d at 1369; *Dell*, 818 F.3d at 1301.

### 2. Qualcomm Presented No Evidence Supporting Its New Obviousness Theory.

To prevail on its new obviousness theory, Qualcomm was required to prove that the proposed combination would have been obvious to one of ordinary skill in the art, including why such a person would have been motivated to replace the Ariie mixer's oscillating signal with the Krauss oscillating signal to cause the Ariie FET to gate a signal. *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art."); *Symantec Corp. v. RPost Commc'ns Ltd.*, IPR2014-00355, 2014 Pat. App. LEXIS 4421, Paper No. 12 at 36-37 (PTAB July 15, 2014).

But because Qualcomm did not make this combination argument until its Reply Brief, it did not submit any evidence on this issue. Instead, the evidence Qualcomm submitted with its Petition only generally concerned its argument that one would have been motivated to use the Ariie mixer design in place of the Krauss mixers to obtain Ariie design's touted "low-voltage operation, low or zero power consumption, and compact size." *See, e.g.*, Appx2989-2990. Qualcomm

made no argument and presented no evidence that any of these purported benefits of Ariie would motivate one of ordinary skill to further modify Ariie's design by replacing the Ariie mixer's oscillating signal with the Krauss oscillating signal to cause the Ariie mixer's FET to gate a signal. *See, e.g.*, Appx2989-2990; Appx3178-3183.

First, Qualcomm argues that ParkerVision waived this argument regarding Qualcomm's failure of proof on this new obviousness theory by not raising it in ParkerVision's Patent Owner Response. QC Br. 54-57. Of course, ParkerVision could not have addressed this argument in its Patent Owner Response (or deposed Qualcomm's expert on this theory or submitted a declaration from its own expert rebutting the theory) because Qualcomm did not raise this theory until its Reply Brief, **after** ParkerVision's discovery and briefing were already complete.

Second, Qualcomm attempts but fails to identify support for its new obviousness theory. The "evidence" identified by Qualcomm concerns only why it would have been obvious to use the Ariie mixer in the Krauss architecture. QC Br. at 56-57. Qualcomm cannot identify any evidence showing why a person of ordinary skill would have chosen to substitute the Krauss oscillating signal for the Ariie oscillating signal, because it never presented any. It had no reason to—Qualcomm only submitted evidence in connection with its initial Ariie Petition in which it relied on the Ariie signal as causing the Ariie FET to gate a signal, and it

did not make its (unsupported) new obviousness theory until its later Reply Brief. *See* PV Br. at 35-38, 49-51.

## CONCLUSION

For these reasons and the reasons presented in ParkerVision's opening brief, the Court should reverse the Board's determinations in the Nozawa and Ariie IPRs that Qualcomm met its burden of proving that the challenged system claims are unpatentable. As to Qualcomm's cross-appeal, the Court should affirm the Board's decision in the 1828 Nozawa IPR that Qualcomm failed to prove that the challenged method claims are unpatentable.

Dated: February 26, 2018

Respectfully submitted,

*/s/ William A. Meunier*

Michael T. Renaud
William A. Meunier
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111

*Attorneys for Appellant ParkerVision, Inc.*

# United States Court of Appeals for the Federal Circuit

*Parkervision, Inc. v. Qualcomm Incorporated, et al.,*
Nos. 2017-2012, -2013, -2014, & -2074

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C., counsel for Appellant to print this document. I am an employee of Counsel Press.

On **February 26, 2018,** counsel has authorized me to electronically file the foregoing **Reply and Response Brief for Appellant Parkervision, Inc.** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including the following principal counsel for the other parties:

Matthew J. Brigham
Cooley LLP
3175 Hanover Street, Suite 400
Palo Alto, CA 94304
650.843.5000
mbrigham@cooley.com
*Counsel for Cross-Appellants Qualcomm Atheros, Inc. and Qualcomm Incorporated*

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

February 26, 2018

/s/ Robyn Cocho
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

__x___The brief contains 10,420 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

____ The brief uses a monospaced typeface and contains ______ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

__x__ The brief has been prepared in a proportionally spaced typeface using MS Word 2015 in a 14 point Times New Roman font or

____ The brief has been prepared in a monospaced typeface using MS Word 2015 with __ characters per inch and in ______ font.

Dated: February 26, 2018

Respectfully submitted,

*/s/ William A. Meunier*
Michael T. Renaud
William A. Meunier
Mintz Levin Cohn Ferris
Glovsky and Popeo P.C.
1 Financial Center
Boston, MA 02111

*Attorneys for Appellant ParkerVision, Inc.*