**2017-2012, -2013, -2014, & -2074**

# United States Court of Appeals for the Federal Circuit

PARKERVISION, INC.,

*Appellant*,

*v.*

QUALCOMM INCORPORATED, QUALCOMM ATHEROS, INC.,

*Cross-Appellants.*

*Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2015-01828, IPR2015-01829, and IPR2015-01831*

**REPLY BRIEF OF CROSS-APPELLANTS QUALCOMM INCORPORATED AND QUALCOMM ATHEROS, INC.**

MATTHEW J. BRIGHAM
DENA CHEN
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
650.843.5000
mbrigham@cooley.com
dchen@cooley.com

EAMONN GARDNER
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121
858.550.6000
egardner@cooley.com

ORION ARMON
COOLEY LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021
720.566.4000
oarmon@cooley.com

*Attorneys for Cross-Appellants Qualcomm Incorporated and Qualcomm Atheros, Inc.*

March 12, 2018

# AMENDED CERTIFICATE OF INTEREST

Counsel for Cross-Appellants certify the following:

1. The full name of every party or amicus represented by me is:

   Qualcomm Incorporated
   Qualcomm Atheros, Inc.

2. The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me:

   The parties named in the caption, Qualcomm Incorporated and Qualcomm Atheros, Inc. are the real parties-in-interest.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   Qualcomm Incorporated is the parent corporation to Qualcomm Technologies, Inc., which is the parent corporation to Qualcomm Atheros, Inc.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   COOLEY LLP
   Matthew J. Brigham
   Eamonn Gardner
   Orion Armon
   Dena Chen
   Timothy T. Teter (former)
   Benjamin G. Damstedt (former)

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly

affected by this court's decision in the pending appeal. See Fed. Cir. R. 47. 4(a)(5) and 47.5(b).

> This Court's decision in the pending appeal will directly affect *ParkerVision, Inc. v. Qualcomm Incorporated, et al.*, Case No. 6:14-cv-00687-PGB-KRS (M.D. Fla.).

Dated: March 12, 2018

*/s/ Eamonn Gardner*
Eamonn Gardner
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
858.550.6000
egardner@cooley.com
*Attorneys for Cross-Appellants, Qualcomm Incorporated, and Qualcomm Atheros, Inc.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................ 1

II. ARGUMENT ............................................................................. 1

A. ParkerVision's Concessions Required Finding the Challenged Method Claims Unpatentable. ................................ 1

B. Qualcomm Was Entitled to Use ParkerVision's Concessions to Show Obviousness; the Board Erred in Characterizing Qualcomm's Argument as "Late-Arising." ........ 5

C. The Board Erred In Requiring Proof Of Actual Performance Of The Method Claim. .......................................... 8

III. CONCLUSION ........................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariosa Diagnostics v. Verinata Health*,
805 F.3d 1359 (Fed. Cir. 2015) ....................7

*Corning v. Fast Felt*,
873 F.3d 896 (Fed. Cir. 2017) ....................4

*Cybersettle v. Nat'l Arbitration Forum*,
243 F. App'x 603 (Fed. Cir. 2007) ....................9

*Genzyme Therapeutic Prods. P'ship v. Biomarin Pharm.*,
825 F.3d 1360 (Fed. Cir. 2016) .................... 5, 6, 7

*Hewlett-Packard v. Mustek Sys.*,
340 F.3d 1314 (Fed. Cir. 2003) ....................8

*Idemitsu Kosan v. SFC*,
870 F.3d 1376 (Fed. Cir. 2017) ....................5

*Kennametal v. Ingersoll Cutting Tool*,
780 F.3d 1376 (Fed. Cir. 2015) ....................9

*Liqwd v. L'Oreal USA*,
No. 2017-2295, 2018 WL 480759 (Fed. Cir. Jan. 16, 2018) ....................9

*Rovalma v. Bohler-Edelstahl GmbH & Co. KG*,
856 F.3d 1019 (Fed. Cir. 2017) ....................4

*Skky v. MindGeek*,
859 F.3d 1014 (Fed. Cir. 2017) ....................3, 4

*Software Rights Archive v. Facebook*,
659 F. App'x 627 (Fed. Cir. 2016) ....................6

*Unwired Planet v. Google*,
841 F.3d 995 (Fed. Cir. 2016) ....................8

# I. INTRODUCTION

There is no dispute on the merits – Nozawa will generate a periodic signal having the claimed "plurality of harmonics" when operated at various frequencies, including the very frequencies ParkerVision conceded were obvious to select. The Board's Final Written Decision found that "it is undisputed that Nozawa's circuit is capable of generating a periodic signal having a plurality of harmonics, wherein those harmonics are integer multiples of the fundamental frequency." (Appx17.) ParkerVision does not dispute this finding on appeal. Nor is there any dispute that using the frequencies ParkerVision selected confirms the obviousness of operating Nozawa to generate a "plurality of harmonics." Accordingly, substantial, uncontroverted evidence demonstrated that Nozawa rendered the challenged claims obvious. This Court should reverse the Board's finding that Qualcomm did not prove, by a preponderance of the evidence, method claims 25, 26, 363-366, 368, 369, 373 are unpatentable.

# II. ARGUMENT

## A. ParkerVision's Concessions Required Finding the Challenged Method Claims Unpatentable.

On appeal, ParkerVision ignores the concessions it made before the Board, and erroneously argues that Nozawa (at Appx818-830) does not

disclose the claimed "plurality of harmonics." (Yellow Br. at 8-13.)

Nozawa discloses a transmitter and receiver design that was configured to be operated over a wide range of frequencies. (*E.g.*, Appx823 (Nozawa simulation with information signal frequency of 500 kHz and oscillating signal frequency of 2 MHz); Appx825-826 (Nozawa prototype testing with information signal frequencies of 0.8 kHz, 1.0 kHz, and 1.3 kHz); Appx824 (providing additional components "to be able to work with LO signals that have higher frequencies"); Appx115-117 (Nozawa's switches will output "many harmonics").) During *inter partes* review before the Board, Qualcomm argued and submitted evidence that it would have been obvious to operate Nozawa to generate a "plurality of harmonics." (*E.g.*, Appx132 ("[A] POSA would consider it obvious to operate Nozawa's mixer at frequencies that would generate harmonics of the fundamental frequency of the periodic signal."); Appx789 and Appx799-800 (Qualcomm's expert explaining why the claimed '940 limitation was obvious based on the teachings of Maas, Nozawa, and the knowledge of a person of skill in the art).)

In attempting to disprove Qualcomm's argument and evidence, ParkerVision did the opposite – it proved Qualcomm's point and conceded

the issue. During the deposition of Qualcomm's expert and in ParkerVision's patent owner response to the Board, ParkerVision acknowledged that it would have been obvious to operate Nozawa with a 0.1 MHz input signal and a 1 MHz oscillator signal. (Appx278-280.) ParkerVision's patent owner response specifically emphasized using a 0.1 MHz input signal and a 1 MHz oscillator signal for Nozawa, and recognized that using these frequencies would result in a periodic signal with the following frequencies: "0.9 MHz (the fundamental frequency), 3.1 MHz, 4.9 MHz, 7.1 MHz, 8.9 MHz, 11.1 MHz, ***and so on*** …." (Appx280 (emphasis added).) Based on the series ParkerVision listed (0.9, 3.1, 4.9, 7.1, 8.9, and 11.1 MHz), ParkerVision argued that Qualcomm had not shown the periodic signal having a "plurality of harmonics." (*Id*. (arguing only 0.9 MHz was an integer multiple of the fundamental frequency, thus there was no evidence of a "plurality of harmonics").)

ParkerVision's selection of frequencies was consistent with, and further supported, the obviousness theory presented in Qualcomm's petition. Qualcomm explained in reply that continuing ParkerVision's series yields values, including 35.1 and 36.9 MHz, which are each integer multiples of the fundamental frequency (0.9 MHz). (Appx293; Appx297-298; *Skky v.*

*MindGeek*, 859 F.3d 1014, 1023 (Fed. Cir. 2017) (petitioner's reply properly responded to the positions laid out by the patent owner).) ParkerVision does not, and cannot, dispute the basic math in continuing ParkerVision's series, which shows that the claimed "plurality of harmonics" is present when Nozawa is operated with the frequencies ParkerVision selected. *E.g.*, *Rovalma v. Bohler-Edelstahl GmbH & Co. KG*, 856 F.3d 1019, 1027 (Fed. Cir. 2017) (stating that the Board was not precluded from using the patent owner's own submissions against it to show unpatentability). After presenting the frequencies it selected to the Board as affirmative proof of how a person of ordinary skill in the art would understand Nozawa to operate, ParkerVision cannot now claim that it selected frequencies that a person of ordinary skill in the art would not choose. ParkerVision's concessions required finding the challenged method claims unpatentable as obvious. The Board's decision rejecting the challenge to the method claims should accordingly be reversed. *E.g.*, *Corning v. Fast Felt*, 873 F.3d 896, 901-02 (Fed. Cir. 2017) ("where only one answer is supported by substantial evidence … reversal is warranted").

### B. Qualcomm Was Entitled to Use ParkerVision's Concessions to Show Obviousness; the Board Erred in Characterizing Qualcomm's Argument as "Late-Arising."

Contrary to ParkerVision's "waiver" argument, the Board erred in finding Qualcomm's argument "late-arising." (Appx21 (refusing to "rely" on Qualcomm's argument to find the challenged method claims unpatentable).) Qualcomm's appeal brief cited *Idemitsu* and *Genzyme* (Red Br. at 72, 67) – two decisions that ParkerVision failed to address, much less attempt to distinguish. In *Idemitsu*, this court rejected the argument that a theory was "too late," because the patent owner itself raised it. *Idemitsu Kosan v. SFC*, 870 F.3d 1376, 1381 (Fed. Cir. 2017). The petitioner was entitled to respond, much like Qualcomm was entitled to use the frequencies ParkerVision selected to confirm the obviousness of the challenged claims. *Id*. ParkerVision cannot credibly argue that it was surprised by Qualcomm's use of the frequencies ParkerVision itself raised. (Appx280; Appx278; Appx251.)

As explained in Qualcomm's appeal brief, Qualcomm was not required to walk through every possible pair of input frequencies to prove invalidity in its petition. (Red Br. at 69-70.) An exhaustive list of all the conditions under which the Nozawa mixer would output the claimed "plurality of harmonics"

would have been impractical to include in the petition. Qualcomm's petition argued that it would have been obvious for a person of ordinary skill in the art to operate Nozawa in a manner to generate the claimed "plurality of harmonics." (*E.g.*, Appx132 ("[A] POSA would consider it obvious to operate Nozawa's mixer at frequencies that would generate harmonics of the fundamental frequency of the periodic signal."); Appx789 and Appx799-800 (Qualcomm's expert explaining why the claimed '940 limitation was obvious based on Nozawa, Mass, and the knowledge of a person of skill in the art); *Software Rights Archive v. Facebook*, 659 F. App'x 627, 641 (Fed. Cir. 2016) (unpublished) (finding no waiver based on the arguments in the petition and expert declaration).)[1] Qualcomm disclosed its obviousness theory, along with a detailed expert declaration, and the parties further developed the record during the course of the trial.

In *Genzyme*, this court recognized that the "development of evidence in the course of the trial is in keeping with the oppositional nature of an *inter partes* review proceeding." *Genzyme Therapeutic Prods. P'ship v.*

[1] ParkerVision offers no response to Qualcomm's argument on appeal that its original petition presented the theory that it would have been obvious for a person of ordinary skill in the art to operate Nozawa in a manner to generate the claimed "plurality of harmonics." (Red Br. at 71-72.)

*Biomarin Pharm.*, 825 F.3d 1360, 1367 (Fed. Cir. 2016). The patent owner could not "plausibly argue that it lacked notice" of two additional prior art references that the patent owner itself raised in its response. *Id.* at 1367. Similarly here, ParkerVision had no plausible argument that it lacked notice that the frequencies it selected confirmed the invalidity of its claims. Qualcomm's petition argued that it would have been obvious to operate Nozawa's mixer at frequencies that would generate the claimed "plurality of harmonics," and Qualcomm was entitled to use the frequencies ParkerVision conceded were obvious to select to demonstrate the obviousness of the challenged claims.

Finally, in *Ariosa*, this court held that the Board erred in refusing to consider a prior art reference simply because it had not been identified in the petition. *Genzyme*, 825 F.3d at 1369 (discussing *Ariosa Diagnostics v. Verinata Health*, 805 F.3d 1359, 1365 (Fed. Cir. 2015)). The Board here similarly erred in characterizing Qualcomm's argument as "late-arising" to reject the challenge to the method claims. (Appx21.) Qualcomm did not need to exhaustively detail every pair of frequencies that would result in the claimed "plurality of harmonics." Nor did Qualcomm raise any new theory or any new prior art reference. Instead, Qualcomm used the frequencies

ParkerVision selected to confirm the obviousness of the challenged claims. The Board erred in characterizing Qualcomm's argument as "late-arising."

### C. The Board Erred In Requiring Proof Of Actual Performance Of The Method Claim.

ParkerVision mistakenly argues that Qualcomm failed to identify errors in the Board's decision. (*Compare* Yellow Br. at 13 *with* Red Br. at 71-72.) As explained in Qualcomm's appeal brief, the Board erroneously held that "it was not sufficient for Qualcomm to show that Nozawa *could* be operated in a manner that meets the claimed method; rather Qualcomm must show that a person of ordinary skill in the art *would* have performed the method as claimed." (Appx18.) In other words, the Board rejected Qualcomm's challenge to the method claims because of lack of proof of actual performance of the claimed method. This rationale was legally unsupportable. *E.g.*, *Hewlett-Packard v. Mustek Sys.*, 340 F.3d 1314, 1326 (Fed. Cir. 2003) ("a prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches that aspect of the invention"); *Unwired Planet v. Google*, 841 F.3d 995, 1002 (Fed. Cir. 2016) ("It does not matter that the use of alphabetical order for locations would not always result in farther-over-nearer ordering. It is enough that the combination would sometimes perform all the method steps, including

farther-over-nearer ordering."); *Kennametal v. Ingersoll Cutting Tool*, 780 F.3d 1376, 1383 (Fed. Cir. 2015) ("Though it is true that there is no evidence in Grab of 'actual performance' of combining the ruthenium binder and PVD coatings, this is not required.").

ParkerVision relies on two unpublished decisions – *Liqwd* and *Cybersettle* – to support the Board's decision. (Yellow Br. at 15 (citing *Liqwd v. L'Oreal USA*, No. 2017-2295, 2018 WL 480759, at *2-4 (Fed. Cir. Jan. 16, 2018) (unpublished) and *Cybersettle v. Nat'l Arbitration Forum*, 243 F. App'x 603, 606 (Fed. Cir. 2007) (unpublished).) Neither decision held that to invalidate a method claim, the challenger must prove a person of ordinary skill in the art would have actually performed the claimed method. *Liqwd* addressed construing the term "hair coloring agent" based on the language of the claim, which covered a method for bleaching hair, and the prosecution history, which provided an express definition. *Liqwd*, 2018 WL 480759, at *2-3. *Cybersettle* addressed whether a party could infringe a method claim merely because it was "capable of" performing the method. *Cybersettle*, 243 F. App'x at 607. Neither decision supports the Board requiring Qualcomm to prove actual performance of the claimed method in order to invalidate the challenged method claims.

The Board's emphasis on actual performance of a method claim is legally unsupported and caused the Board to err in rejecting Qualcomm's challenge to the method claims. There was substantial, uncontroverted evidence in the record that the claimed "plurality of harmonics" is obvious in view in Nozawa, including when a 0.1 MHz input signal and a 1 MHz oscillator signal (the very frequencies that ParkerVision chose) are used. (Appx293; Appx297-298.) Accordingly, the Board should have found the challenged method claims unpatentable. (Appx17; Appx21.)

## III. CONCLUSION

Qualcomm submitted timely, substantial, and uncontroverted evidence for the "plurality of harmonics" limitation, including ParkerVision's own admissions confirming the obviousness of selecting frequencies in Nozawa that satisfy the claim limitation. The Board's finding that Qualcomm had not proven, by a preponderance of the evidence, that claims 25, 26, 363-366, 368, 369, 373 are unpatentable should be reversed.

Dated: March 12, 2018

Respectfully submitted,

*/s/ Eamonn Gardner*

EAMONN GARDNER
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121
858.550.6000
egardner@cooley.com

ORION ARMON
COOLEY LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021
720.566.4000
oarmon@cooley.com

MATTHEW J. BRIGHAM
DENA CHEN
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
650.843.5000
mbrigham@cooley.com
dchen@cooley.com

*Attorneys for Cross-Appellants*
*Qualcomm Incorporated and Qualcomm Atheros, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
*ParkerVision v. Qualcomm*, Nos. 2017-2012, -2013, -2014 & -2074

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that: Counsel Press was retained by Cooley LLP, Attorneys for Cross-Appellants, to print this document. I am an employee of Counsel Press.

On March 12, 2018, counsel authorized me to electronically file the foregoing **REPLY BRIEF OF CROSS-APPELLANTS QUALCOMM INCORPORATED AND QUALCOMM ATHEROS, INC.** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

William Meunier
Sandra Badin
Michael Newman
Michael Timothy Renaud
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center 6th Floor Boston MA 02111
wameunier@mintz.com
sjbadin@mintz.com
mcnewman@mintz.com
mtrenaud@mintz.com

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

March 12, 2018

/s/ John C. Kruesi, Jr.
Counsel Press

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e) and 32(a)(7)(B) and Fed. Cir. R. 32(a):

X The brief contains 1,937 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fed. Cir. R. 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6):

X The brief has been prepared in a proportionally spaced typeface using MS Word 2013 in a 14 point Times New Roman font.

Dated: March 12, 2018

*/s/ Eamonn Gardner*
Eamonn Gardner
*Attorney for Cross-Appellant*